UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HERACLIO SANTIAGO,

                              Plaintiff,

                    -v-

ANTHONY ANNUCCI, *et al.*,

                              Defendants.

No. 20-CV-4530 (KMK)

OPINION & ORDER

Appearances:

Heraclio Santiago
Brooklyn, NY
*Pro se Plaintiff*

Bruce J. Turkle, Esq.
State of New York Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Heraclio Santiago ("Plaintiff") brings the instant Complaint, pursuant to

42 U.S.C. § 1983, against Acting Commissioner of the New York State Department of

Corrections and Community Supervision ("DOCCS") Anthony Annucci ("Annucci" or

"Commissioner"), Fishkill Correctional Facility Superintendent Leroy Fields ("Fields"), and

"Bureau Chief" Derek Jones ("Jones") (collectively, "Defendants").  (Compl. 2 (Dkt. No. 2).)

Before the Court is Defendants' Motion To Dismiss pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure (the "Motion").  (*See* Not. of Mot. (Dkt. No. 21).)  For the reasons

discussed below, the Motion is granted.

I.  Background

A.  Factual Background

The pertinent facts, drawn from Plaintiff's Complaint and taken as true for purposes of resolving the instant Motion, are as follows.  In February 2019, Plaintiff, formerly an inmate at Fishkill Correctional Facility, was released on parole.  (Compl. 3.)  Because Plaintiff was convicted of unlawful imprisonment in the first degree, he was forbidden from living within 1,000 feet of any school.  (*Id.*)  Plaintiff's case had no "sexual component," and Plaintiff does not have a "history of sex in [his] record."  (*Id.*)[1]  Plaintiff alleges that Defendant Fields held him past his conditional release date, which was April 29, 2020, evidently because of a delay in finding housing that complied with the New York Sexual Assault Reform Act ("SARA").  (*Id.*)  Plaintiff alleges that as a result of Defendants' actions, he suffered "mental anguish" and "hung up in [his] cell."  (*Id.*)  Plaintiff seeks a preliminary injunction removing him from the "registry [of] sex offender[s]" and enjoining Defendants from "subjecting [him] to [the] provision[s] applicable to sex offender[s] under [the Sexual Offender Reform Act ("SORA")] or the mandatory parole condition prescribed for sex offender[s]."  (*Id.* at 5.)  Plaintiff also seeks damages of $270 per day for "[18] months of hold and [$]200,000.00 for pain and suffering [and] mental anguish."  (*Id.*)[2]

---

[1] Quotations from Plaintiff's Complaint reflect minor corrections in spelling and grammar.

[2] Plaintiff's Complaint, which is handwritten, requests "2000.000[00]" in damages. (Compl. 5.)  It is not entirely clear whether Plaintiff is requesting $2,000,000 or $200,000 in damages.

B.  Procedural History

Plaintiff filed his Complaint on June 11, 2020, naming DOCCS, Fields, and Jones as Defendants.  (Dkt. No. 2.)  Plaintiff was granted in forma pauperis ("IFP") status on July 27, 2020.  (Dkt. No. 4.)  On August 5, 2020, "in light of Plaintiff's pro se status and clear intention to seek injunctive relief from the Acting Commissioner of DOCCS," the Court "construe[d] the [C]omplaint as asserting claims against Annucci" and therefore substituted Annucci for DOCCS as a Defendant in this case.  (Order of Serv. 2 (Dkt. No. 6).)[3]  On August 20, 2020, Plaintiff filed a letter notifying the Court that "there [was] an error on the name of [the] Bureau Chief" named in the Complaint."  (Dkt. No. 8.)  Plaintiff stated that he (Plaintiff) was "in Brooklyn[,] not the Bronx."  (*Id.*)  Though Plaintiff did not know who the bureau chief in Brooklyn was, he asked that "this be fixed."  (*Id.*)[4]  On November 18, 2020, counsel for Defendant Annucci requested a 45-day extension of time to respond to the Complaint, the reason being that neither Fields nor Jones had been served with the Complaint.  (Dkt. No. 10.)  The Court granted the request.  (Dkt. No. 12.)  On January 7, 2021, counsel for Defendant Annucci filed a pre-motion letter regarding Annucci's proposed motion to dismiss the Complaint.  (Dkt. No. 14.)  By Memo Endorsement entered January 20, 2021, the Court adopted a briefing schedule for Annucci's motion.  (Dkt. No. 15.)  On February 9, 2021, counsel for Annucci, now also representing Defendants Fields and Jones, filed a supplemental pre-motion letter requesting that Fields and Jones be granted leave to

---

[3] As the Court explained in its August 5 Order, "state agencies, including DOCCS, and state officials acting in their official capacities are generally not 'persons' subject to suit under § 1983."  (Order of Serv. 2 (gathering cases).)  However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  (*Id.* (quotation marks omitted) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).)

[4] It is possible Plaintiff forgot that his Complaint in fact purported to name the "Bureau Chief" in Brooklyn, not the Bronx.  (*See* Compl. 2.)

join in Annucci's Motion To Dismiss.  (Dkt. No. 19.)  The Court granted the request on the same day.  (Dkt. No. 20.)

Pursuant to the Court's briefing schedule, Defendants filed the instant Motion and supporting papers on February 19, 2021.  (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 22).)  On March 12, 2021, counsel for Defendants filed a letter informing the Court that although Plaintiff had not updated his address on the docket, he had in fact been released from Fishkill Correctional Facility on February 9, 2021.  (Dkt. No. 25.) Defense counsel noted that he had mailed a courtesy copy of Defendants' motion papers to Plaintiff's last known address.  (*Id.*)  However, in view of Plaintiff's pro se status, and the possibility that Plaintiff's failure to update his address had delayed receipt of Defendants' motion, Defense counsel suggested that the Court order Plaintiff to update his address on the docket and extend his time to oppose the Motion.  (*Id.*)  On March 19, 2021, Plaintiff updated his address on the docket.  (Dkt. No. 26.)  On March 22, 2021, counsel for Defendants notified the Court that he had mailed a courtesy copy of Defendants' motion papers to Plaintiff at his new address, and again suggested that the Court consider adjusting the briefing schedule to provide Plaintiff additional time to oppose the Motion.  (Dkt. No. 27.)  By Memo Endorsement entered April 7, 2021, the Court gave Plaintiff until April 30, 2021 to file an Opposition to the Motion, and gave Defendants until May 14, 2021 to file a Reply.  (Dkt. No. 28.)  Plaintiff never filed his opposition papers.  (*See* Dkt.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of

his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted), and "his opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)

(citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citation and italics omitted)).

    B.  Analysis

    Though Plaintiff has not identified the particular Constitutional provisions under which his claims arise, the Court construes the Complaint to assert claims for violations of Plaintiff's Fourteenth Amendment due process rights and Eighth Amendment right to be free from cruel and unusual punishment.  The Court also assumes that Plaintiff intends to sue Defendants in both their individual capacities (with respect to Plaintiff's claim for damages) and their official capacities (with respect to Plaintiff's claim for injunctive relief).[5]  Defendants seek to dismiss the Complaint on multiple grounds, arguing that Plaintiff's Action is barred by the doctrine articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994); that the Complaint contains no substantive allegations against Jones and fails to allege the personal involvement of Fields; that

---

[5] Insofar as Plaintiff sues Defendants for damages in their official capacities, such a claim would be barred by sovereign immunity.  *See, e.g.*, *Scott v. Rosenberger*, No. 19-CV-1769, 2020 WL 4274226, at *4 (S.D.N.Y. July 24, 2020) ("DOCCS officials enjoy Eleventh Amendment immunity from suit under § 1983 for damages in their official capacities." (citation omitted)). "[U]nder the venerable doctrine of *Ex parte Young*," however, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."  *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted).  Although Defendants assert that Annucci has been "sued *solely* in his official capacity as Acting Commissioner of [DOCCS]," (Defs.' Mem. 1 (emphasis added)), the Court's August 5, 2020 Order of Service did not construe Plaintiff's claim so narrowly, (*see* Order of Serv. 2).  Rather, the Court merely explained that in view of Plaintiff's clear intention to seek injunctive relief, it would construe Plaintiff's claim against DOCCS as a claim against Annucci—a suable party under § 1983—instead.  (*Id.*)  Although the Court necessarily interprets Plaintiff's request for injunctive relief as a claim against Annucci in his official capacity, the Court's previous Order does not preclude it from also interpreting Plaintiff's request for damages as a claim against Annucci in his individual capacity.  *See, e.g.*, *DeLoreto v. Ment*, 944 F. Supp. 1023, 1027, 1032 (D. Conn. 1996) (denying motion to dismiss damages claim against defendants in their individual capacities and claim for prospective injunctive relief against same defendants in their official capacities).

the Complaint fails to plead a procedural due process or Eighth Amendment violation; and that

Defendants are entitled to qualified immunity.  (*See generally* Defs.' Mem.)  The Court will

consider these arguments as necessary to resolve the instant Motion.

### 1.  Procedural Due Process

Pursuant to the Due Process Clause of the Fourteenth Amendment, "[n]o State shall . . .

deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend.

XIV; *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (holding that a procedural due

process violation arises under the Fourteenth Amendment when a plaintiff has been deprived of a

constitutionally protected interest in life, liberty, or property without due process of law).  The

Due Process Clause protects "the individual against arbitrary action of government."  *Wolff v.

McDonnell*, 418 U.S. 539, 558 (1974); *see also Zherka v. Ryan*, 52 F. Supp. 3d 571, 582

(S.D.N.Y. 2014) (same).  To state a procedural due process claim, a plaintiff "must first establish

that he enjoyed a protected liberty interest."  *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998).  If

a plaintiff establishes such a protected interest, the next question is whether "the procedures

followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219

(2011).

It is an open question in the Second Circuit whether a prisoner has a liberty interest in his

or her conditional release from prison.  *See Doe v. Simon*, 221 F.3d 137, 139 (2d Cir. 2000)

(refusing to "reach the thorny question of whether a liberty interest exist[s]" in conditional

release); *see also Hayes v. Annucci*, No. 14-CV-8845, 2016 WL 1746109, at *3 (S.D.N.Y. Apr.

29, 2016) ("[T]he Second Circuit has declined to opine on whether New York recognizes a

liberty interest in conditional release."); *Muhammad v. Evans*, No. 11-CV-2113, 2014 WL

4232496, at *7 (S.D.N.Y. Aug. 15, 2014) (same); *Ahlers v. Boruch*, No. 04-CV-1747, 2007 WL

8

2042794, at *7 (E.D.N.Y. July 16, 2007) (same).  But even if Plaintiff had adequately alleged

sufficient facts to establish such a liberty interest, Plaintiff has failed to allege that he did not

receive the minimum process due under the circumstances.  *Cf. Doe*, 221 F.3d at 139 ("[E]ven if

[a liberty interest] did [exist], [the plaintiff] received sufficient process to satisfy his

constitutional rights."); *D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *8–9

(S.D.N.Y. Dec. 19, 2017) (assuming without deciding that the plaintiff had adequately alleged a

liberty interest in his conditional release from prison, but finding that he had failed adequately to

allege that the State procedures were constitutionally insufficient).  "It is undisputed that under

New York law the Board of Parole is entitled to impose conditions on the conditional release of

an inmate such as [Plaintiff]."  *Doe*, 221 F.3d at 139.  In *Doe*, the Second Circuit held that the

"minimum" due process owed to an inmate with an approved housing condition as part of his

conditional release requires "notice that [the inmate] would not be released without an approved

residence, an explanation of why this special condition was being imposed, and an opportunity to

dispute the grounds for application of the special condition."  *Id.* at 140.  The Complaint does not

allege that Plaintiff was deprived of these minimum procedural requirements.  (*See generally*

Compl.)  All that is clear from the brief, cursory allegations in the Complaint is that Plaintiff

disagrees with one of the conditions of his release, namely that he live in SARA-compliant

housing.  (*See id.* at 3.)  "Plaintiff's claim, then, is a challenge to the mere fact of his

confinement beyond his conditional release date, and is devoid of any allegations regarding

specific deficiencies in the process he was afforded."  *D'Angelo*, 2020 WL 777907, at *9

(dismissing plaintiff's procedural due process claim where the plaintiff "[did] not allege that he

received insufficient notice that an approved, SARA compliant residence would be required for

his release"); *see also Velazquez v. Gerbing*, No. 18-CV-8800, 2020 WL 777907, at *9–10

(S.D.N.Y. Feb. 18, 2020) (holding that the plaintiff failed to state a procedural due process claim where he was aware that his release was conditioned on the parole board's approval of SARA-compliant housing and had been given a meaningful opportunity to advocate for his proposed residence).  Thus, Defendants are entitled to dismissal of Plaintiff's due process claim on the ground that he has failed to state a claim.

Plaintiff's failure to allege the personal involvement of any Defendant also provides an additional, independent basis to dismiss his procedural due process claim.  "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (italics omitted).  In other words, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Here, the sole allegation against Fields is Plaintiff's assertion that "Superintendent Fields of Fishkill Correctional Facility is holding [him] past [his] [conditional release]."  (Compl. 3.)  There are no allegations with respect to Jones or Annucci, the latter of whom was substituted as a Defendant for DOCCS.  (*See* Compl.; Order of Serv.)  As discussed, Plaintiff fails to identify any alleged violation of procedural due process requirements to begin with, let alone allege that Defendants were *personally involved* in such a violation.  Plaintiff does not allege, for example, that any Defendant personally prevented him from receiving "notice that he would not be released without an approved residence, an explanation of why this special condition was being imposed, and an opportunity to dispute the grounds for application of the special condition."  *Doe*, 221 F.3d at 140; *cf. Joseph v. Cuomo*, No. 20-CV-3957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (finding that plaintiff adequately pled that a parole officer was personally involved

10

in depriving him of an opportunity to advocate for SARA-compliant housing where the parole

officer allegedly "provided misleading information, did not attempt to verify [the] [p]laintiff's

proposals for [SARA-]compliant residences, and summarily denied each address [the] [p]laintiff

submitted").  Plaintiff appears to name Fields as a Defendant solely because he serves as

superintendent of the facility in which he was being held.  (*See* Compl. 3.)  Annucci, likewise,

was substituted for DOCCS by virtue of his role as the Acting Commissioner of that

organization.  (*See* Order of Serv.)  But as the Second Circuit recently made clear in *Tangreti v.

Bachmann*, 983 F.3d 609 (2d Cir. 2020), "there is no special rule for supervisory liability," *id.* at

618.  "Whatever the alleged constitutional violation, after *Tangreti*, '[t]he violation must be

established against the supervisory official directly.'"  *Falls v. Pitt*, No. 16-CV-8863, 2021 WL

1164185, at *32 (S.D.N.Y. Mar. 26, 2021) (alteration in original) (quoting *Tangreti*, 983 F.3d at

618).  Plaintiff's failure to explain how any one of the three Defendants was personally involved

in the alleged constitutional violation requires that the procedural due process claim be

dismissed.  *See Joseph*, 2021 WL 200984, at *8 ("Because the [c]omplaint does not contain

specific factual allegations as to how [a particular defendant] personally contributed to [the]

[p]laintiff['s] receiving insufficient procedures for his housing placement, the [c]ourt cannot infer

that [that defendant] was personally involved for the purposes of § 1983 liability."); *Velazquez*,

2020 WL 777907, at *7 (dismissing § 1983 claims against the acting commissioner of DOCCS

and the chairperson of the New York State Board of Parole where the complaint failed

adequately to allege that these officials were personally involved in detaining the plaintiff past

his open parole date based on a delay in finding SARA-compliant housing); *D'Angelo*, 2017 WL

6514692, at *4–5 (dismissing § 1983 claims where the plaintiff failed to allege how the

defendants were personally involved in his being held past his conditional release date because

of a delay in finding SARA-compliant housing).  In addition, the fact that the body of the

Complaint contains no substantive allegations regarding Jones or Annucci, (*see* Compl.), "is

itself ground for dismiss[ing]" them from this Action, *D'Angelo*, 2017 WL 6514692, at *5; *see*

*also Manley v. Ramos*, No. 13-CV-2662, 2014 WL 1496094, at *2 (S.D.N.Y. Apr. 16, 2014)

(dismissing claims where the plaintiff "name[d] [police officers] as defendants in the caption, but

. . . never mention[ed] them again in the body of the complaint"); *Ortiz v. Bloomberg*, No. 10-

CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (dismissing claims where "the only

named reference to [certain correctional officers] [was] in the caption of the [c]omplaint, and the

only additional references to these defendants [were] merely conclusory statements about their

personal involvement and liability").

　　In sum, "Plaintiff has not alleged any way in which [the] Defendants were personally

responsible for, or involved in the circumstances that resulted in, his continued incarceration

beyond his conditional release date." *D'Angelo*, 2017 WL 6514692, at *5.  Thus, in addition to

Plaintiff's failure to plead a specific violation of procedural due process requirements, his claim

must also be dismissed for failure to allege Defendants' personal involvement.

　　Finally, qualified immunity provides a third independent basis to dismiss Plaintiff's

procedural due process claim.  The doctrine of qualified immunity shields government officials

"from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).  This protection attaches only "if (a) the

defendant's action did not violate clearly established law, or (b) it was objectively reasonable for

the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d

108, 114 (2d Cir. 2015) (citation omitted).  In this context, a court "is guided by two questions:

12

first, whether the facts show that the defendants' conduct violated [the] plaintiffs' constitutional rights, and second, whether the right was clearly established at the time of the defendants' actions." *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014) (citation, quotation marks, and brackets omitted).

The Court need not reach the second prong of this inquiry because, as discussed above, Plaintiff has not plausibly pled that Defendants violated his constitutional rights. *See Posr v. City of New York*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014) (summary order). But even assuming Plaintiff's rights were violated by his confinement beyond his conditional release date, qualified immunity would still shield Defendants from suit. As noted, it remains an open question in the Second Circuit whether there is a constitutional liberty interest in conditional release. *See Doe*, 221 F.3d at 139; *Hayes*, 2016 WL 1746109, at *3; *Muhammad*, 2014 WL 4232496, at *7; *Ahlers*, 2007 WL 2042794, at *5. It cannot be said, therefore, that a plaintiff's right to release upon the occurrence of his conditional release date was clearly established at the time of the alleged denial. Accordingly, Defendants are entitled to dismissal of Plaintiff's due process claim on this separate ground as well. *See D'Angelo*, 2017 WL 6514692, at *9 (dismissing procedural due process claim based on qualified immunity where the plaintiff alleged that the defendants detained him past his conditional release date); *McKay v. City of New York*, 32 F. Supp. 3d 499, 510 (S.D.N.Y. 2014) (granting qualified immunity when the case law "provide[s] a basis for reasonable officers to disagree" as to constitutional requirement); *Estrella v. Menifee*, 275 F.

13

Supp. 2d 452, 460 (S.D.N.Y. 2003) (granting qualified immunity "given the absence of a binding [Second Circuit] decree invalidating" the officials' actions).

### 2. Eighth Amendment Claim

"The Eighth Amendment prohibits the infliction of cruel and unusual punishments on those convicted of crimes, including deprivations suffered during imprisonment, provided that they involve the unnecessary and wanton infliction of pain." *Franza v. Stanford*, No. 16-CV-7635, 2018 WL 914782, at *12 (S.D.N.Y. Feb. 14, 2018) (ellipsis and quotation marks omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991)). "A plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must meet two requirements[:] First, the alleged deprivation must be, in objective terms, sufficiently serious[;] [and] [s]econd, the charged official must act with a sufficiently culpable state of mind." *Joseph*, 2021 WL 200984, at *9 (quotation marks omitted) (quoting *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019)). "For extended incarceration to rise to the level of an Eighth Amendment violation, it 'must . . . be the product of deliberate indifference.'" *D'Angelo*, 2017 WL 6514692, at *10 (alteration in original) (quoting *Campbell v. Peters*, 256 F.3d 695, 700 (2d Cir. 2001)); *see also Joseph*, 2021 WL 200984, at *9 (same); *Aponte v. Fischer*, No. 14-CV-3989, 2018 WL 1136614, at *10 n.8 (S.D.N.Y. Feb. 28, 2018) (same). Moreover, "to prevail on such claims, plaintiffs must normally allege that they were held beyond their maximum sentence." *Joseph*, 2021 WL 200984, at *9 (citing *D'Angelo*, 2017 WL 6514692, at *10).

Here, Plaintiff alleges that he filed a grievance, but that his "appeal was lost." (Compl. 4.) He also alleges that he "wrote DSS on March 2020 [but] didn't receive any reply." (*Id.* at 5.) Standing alone, these allegations are insufficient to establish that Defendants were "deliberately indifferent" to Plaintiff's situation, because the Complaint "does not allege that any . . .

Defendant personally knew about Plaintiff's prolonged incarceration." *D'Angelo*, 2017 WL 6514692, at *10 (dismissing Eighth Amendment deliberate indifference claim where the plaintiff failed to allege that any of the defendants personally knew about his prolonged detention); *see also Armstead v. Dep't of Corrs. Comm. Supervision*, No. 13-CV-88, 2013 WL 1312017, at *4 (E.D.N.Y. Mar. 28, 2013) (dismissing complaint because it "offer[ed] no facts to show that either of the supervisory defendants actually received and read [plaintiff's correspondence], or that they were at any point aware of the circumstances of his detention"); *Beahm v. Burke*, 982 F. Supp. 2d 451, 461 (E.D. Pa. 2013) ("[I]n order to obtain relief for continued detention under § 1983, a prisoner must show that a prison official was aware of his overstay and was deliberately indifferent in rectifying the problem."); *Lozada v. Warden Downstate Corr. Facility*, No. 10-CV-8425, 2012 WL 2402069, at *3 (S.D.N.Y. June 26, 2012) (dismissing prolonged-incarceration claim against a warden because "[a] prison official cannot be personally liable under § 1983 on the basis of respondeat superior or simply because he is atop the prison hierarchy," and the complaint "fail[ed] to allege [the warden's] direct involvement" in the prolonged incarceration). Thus, Plaintiff fails to establish that any Defendant "act[ed] with a sufficiently culpable state of mind." *Francis*, 942 F.3d at 150.

    Even if the Complaint had adequately pled the deliberate indifference requirement, it does not allege that Plaintiff was held beyond his *maximum* sentence, and thus, the Eighth Amendment claim fails for this reason as well. *See D'Angelo*, 2017 WL 6514692, at *10 (dismissing Eighth Amendment claim where the plaintiff had not been held beyond his maximum sentence); *see also Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (holding that five days of incarceration beyond the plaintiff's maximum sentence "did not inflict a harm of a magnitude that violates a person's [E]ighth [A]mendment rights"

(citation and quotation marks omitted)); *Joseph*, 2021 WL 200984, at \*9 (dismissing Eighth Amendment claim against parole officer where the plaintiff had failed to "provide additional details about the maximum length of his sentence, and how long he actually served"); *Lozada*, 2012 WL 2402069, at \*2 (holding that an "additional seven days of incarceration" beyond a prisoner's maximum sentence "is insufficient to bring an Eighth Amendment claim"); *Brims v. Burdi*, No. 03-CV-3159, 2004 WL 1403281, at \*2 (S.D.N.Y. June 23, 2004) (holding that six days of imprisonment beyond the plaintiff's maximum sentence "is not a harm of sufficient magnitude to implicate the Eighth Amendment"); *cf. Gilblom v. Gillipsie*, No. 08-CV-1672, 2010 WL 1813494, at \*9 (W.D. Pa. Apr. 6, 2010) (noting that "[c]ases in which an Eighth Amendment claim has been recognized in the context of an overstay [in prison] involve significant periods of time," and citing cases involving 145 days to two years of prolonged confinement), *adopted by* 2010 WL 1813483 (W.D. Pa. May 5, 2010), *aff'd*, 435 F. App'x 165 (3d Cir. 2011).  Thus, without "additional details about the maximum length of [Plaintiff's] sentence, and how long he actually served," *Joseph*, 2021 WL 200984, at \*9, the Court is not prepared to hold that Plaintiff's detention "beyond his conditional release date . . . rise[s] to the level of cruel and unusual punishment," *D'Angelo*, 2017 WL 6514692, at \*10.[6]

_____

[6] Given the various deficiencies the Court has identified with respect to Plaintiff's Eighth Amendment and Fourteenth Amendment claims, it need not reach the question whether Plaintiff's Action is barred under the *Heck* doctrine, as Defendants argue.  (*See* Defs.' Mem. 4–5.)  The *Heck* doctrine "is an issue that continues to cause some consternation in this Circuit," *Teichmann v. New York*, 769 F.3d 821, 828, 830 (2d Cir. 2014) (Calabresi, J., concurring), and "district courts within [this] [Circuit] have reached different conclusions as to whether a claimant may bring a [§] 1983 damages claim when the claimant is no longer in custody or otherwise cannot bring a habeas action," *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 458–59 (E.D.N.Y. 2018) (gathering cases).  Given the lingering "lack of clarity" on this question, *id.* at 458, Judge Calabresi has admonished district courts to resolve cases on non-*Heck* grounds whenever possible, *see Teichmann*, 769 F.3d at 829 (Calabresi, J., concurring) ("[M]any cases that have the potential to raise *Heck* questions can be disposed of based on well-settled principles upon which there is broad agreement, and when that is so, it is generally desirable for [the Second Circuit]

3.  Injunctive Relief

Plaintiff's claim for a preliminary injunction against Defendants, (Compl. 5), must be

dismissed.  As noted *supra* note 5, "a plaintiff may sue a state official acting in his official

capacity—notwithstanding the Eleventh Amendment—for prospective injunctive relief from

violations of federal law."  *In re Deposit Ins. Agency*, 482 F.3d at 617 (quotation marks omitted).

"To obtain prospective injunctive relief, whether preliminary or permanent, a plaintiff 'cannot

rely on past injury[,] but must show a likelihood that [he] will be injured in the future.'"  *Johnson*

*v. Padin*, No. 20-CV-637, 2020 WL 4818363, at *6 (D. Conn. Aug. 16, 2020) (ellipses omitted)

(quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *Kelly v. N.Y.*

*State Civ. Serv. Comm'n*, No. 14-CV-716, 2015 WL 861744, at *4 n.4 (S.D.N.Y. Jan. 26, 2015)

(same); *see also Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) (summary order)

("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future*

or *continuing* harm."); *Joseph*, 2021 WL 200984, at *5 n.4 (same); *Krull v. Oey*, No. 19-CV-142,

2019 WL 1207963, at *10 (N.D.N.Y. Mar. 14, 2019) (same).  Here, although Plaintiff seeks an

injunction that would "take [him] off [the] registry [of] sex offender[s]" and would "enjoin[]

[Defendants] from subjecting [him] to [the] provision[s] applicable to sex offender[s] under

SORA or the mandatory parole condition[s] prescribed for sex offenders," (Compl. 5), he fails to

allege "a likelihood of either future harm or continuing harm," *Krull*, 2019 WL 1207963, at *10.

The only harm suggested in the Complaint is Plaintiff's now-former detention and the resultant

"mental anguish."  (*See* Compl. 3.)  Because Plaintiff was released from Fishkill in February

2021, (Dkt. No. 25), and has since taken up residence in a Brooklyn apartment, (*see* Dkt. No.

---

and for district courts to decide them on these non *Heck* grounds.").  Here, "where there is an
obvious and overwhelming defense to the § 1983 action," the Court "need [not] reach difficult
*Heck* issues."  *Id.*

26), the harm he alleges has been eliminated by virtue of his release, *cf. D'Angelo*, 2017 WL

6514692, at *11 (concluding that because the plaintiff had been released from prison since the

filing of his complaint, his "request for injunctive relief in the form of his immediate release"

should be dismissed as moot); *Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008)

(explaining that "[w]here a prisoner has been *released* from prison, his [or her] claims for

injunctive relief based on the conditions of his [or her] incarceration must be dismissed as

moot").  Though it is possible Plaintiff envisions other potential harm from having to comply

with SORA provisions—such as stigma, or difficulty locating housing in the future—no such

harm is alleged in the Complaint.  (*See* Compl.)  Because Plaintiff has solely "rel[ied] on past

injury," without "show[ing] a likelihood that []he will be injured in the future," the Court may

not grant his claim for prospective injunctive relief.  *DeShawn*, 156 F.3d at 344; *see also, e.g.*,

*Johnson*, 2020 WL 4818363, at *6 (dismissing claim for injunctive relief where the plaintiff

failed to allege future harm); *Patterson v. Patterson*, No. 16-CV-844, 2019 WL 1284346, at *6

(W.D.N.Y. Mar. 20, 2019) ("Plaintiff fails to allege an ongoing violation or threat of future

enforcement of federal law that would entitle him to injunctive relief."); *Caruso v. Zugibe*, No.

14-CV-9185, 2015 WL 5459862, at *5 (S.D.N.Y. June 22, 2015) (denying claim for prospective

injunctive relief because, "even if [the] defendants [had] violated [the] plaintiff's rights in the

past as she allege[d]," the plaintiff "ha[d] not plausibly alleged a sufficient likelihood that she

[would] again be wronged in a similar way." (citation, quotation marks, and brackets omitted)).

### III.  Conclusion

For the reasons stated above, Defendants' Motion is granted.  In light of Plaintiff's pro se

status, and because this is the first adjudication of Plaintiff's claims on the merits, the claims are

dismissed without prejudice.  If Plaintiff wishes to file an amended complaint alleging additional

facts and otherwise addressing the deficiencies identified above, he must do so within 30 days of

the date of this Opinion & Order.  Failure to properly and timely amend will likely result in dismissal of the already-dismissed claims with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 21), and mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket.

SO ORDERED.

Dated:   September 24, 2021
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge